UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERRELL C.,

          Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

          Defendant.

CASE NO. C18-5082-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1976.[1] (AR 86.) The ALJ found that plaintiff has a "limited

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

education" (AR 27), based upon her testimony that she attended a GED program but that there was some uncertainty whether the program was authorized to award a GED. (AR 45.) Plaintiff previously worked as a casino cashier. (AR 45, 48.)

Plaintiff filed an application for DIB and SSI in October, 2014 alleging disability beginning October 1, 2003.[2] (AR 86.) Plaintiff's application was denied at the initial level and on reconsideration. (AR 86-95, 97-108.)

On March 2, 2017, ALJ Allen G. Erickson held a hearing, taking testimony from plaintiff and Vocational Expert (VE) Steve Duchesne. (AR 36-78.) On May 17, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 15-28.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on November 27, 2017 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 17.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's posttraumatic stress disorder (PTSD) and panic disorder with agoraphobia were severe

---

[2] At the hearing, Plaintiff requested reopening of a prior application that was denied on August 5, 2010. The ALJ denied the request. (AR 15.) Plaintiff has not appealed that determination.

ORDER
PAGE - 2

impairments. (AR 17-18.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 20-21.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff is able to understand, remember, and apply short and simple instructions while performing only routine and predictable tasks in a setting without fast-paced production-type work; she is able to make simple decisions and to have exposure to only occasional workplace changes; she is able to have occasional interaction with co-workers and no interaction with the general public. (AR 22.) With that assessment, the ALJ found plaintiff unable to perform her past relevant work. (AR 27.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of VE Steve Duchesne, the ALJ found plaintiff capable of performing other jobs, such as work as an auto detailer, industrial cleaner and small products assembler. (AR 27-28.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported

ORDER
PAGE - 3

by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ improperly evaluated the evidence of her therapist, Kathleen Pruitt, and of consultative psychological examiner Christopher Meagher, Ph.D., misevaluated her testimony regarding her symptoms, and failed to give proper credit to lay evidence provided by her mother. Plaintiff also contends that, as a result of these errors, the ALJ improperly assessed her RFC, resulting in an erroneous finding at step five. She requests remand for an award of benefits. Dkt. 12 at 1. The Commissioner argues that the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Evidence

Plaintiff argues the ALJ erred in the consideration of evidence from therapist Kathleen Pruitt and consultative psychological examiner Dr. Meagher.

The Social Security regulations applicable to plaintiff's claim distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including therapists, are considered "other sources." 20 C.F.R. §§ 404.1502, 404.1513, 416.902, 416.913 (effective Sept. 3, 2013-March 26, 2017), and Social Security Ruling (SSR) 06-03p

rescinded effective March 27, 2017).[3] In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must provide clear and convincing reasons for rejecting the opinion of a physician where it is not contradicted by another physician, or specific and legitimate reasons, supported by substantial evidence, for rejecting a physician's contradicted opinion. *Id*. at 830-31. The ALJ may assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may discount their opinions by providing reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.    Kathleen Pruitt, MSW, LMHC

The record contains two virtually identical letters (AR 269, 293), a Medical Source Statement form (AR 289-92), and treatment notes (AR 255-61, 270-74, 294-303) from Plaintiff's therapist, Kathleen Pruitt. Ms. Pruitt's letters, dated December 1, 2015 and January 18, 2017, stated that plaintiff began therapy with Ms. Pruitt in 2011 and resumed in October, 2015. (AR 269, 293.)[4] Consistent with the medical source evidence in the record, Ms. Pruitt diagnosed PTSD; she also diagnosed generalized anxiety disorder with agoraphobia and major depressive disorder.[5]

---

[3] These regulations apply only to cases, like this one, that were filed before March 27, 2017. New regulations for evaluating medical evidence apply to claims filed after March 27, 2017. 82 Fed. Reg. 5844 (Jan. 18, 2017).

[4] The two letters differ only in that the 2017 letter deletes the statement, found in the 2015 letter, that Plaintiff had been attending therapy "consistently." (AR 269, 293.)

[5] The ALJ noted that medical sources had diagnosed panic disorder with agoraphobia instead of generalized anxiety disorder and found that the former better addressed Plaintiff's symptoms. (AR 18.) With respect to major depressive disorder, the ALJ noted that no medically acceptable source had made that diagnosis and, in the absence of any medical findings, found that the condition was not medically determinable. (AR 19.) Plaintiff has not challenged either finding.

ORDER
PAGE - 5

Ms. Pruitt's letters stated that Plaintiff has suffered "debilitating anxiety" for many years due to domestic violence and traumatic events, and although Plaintiff "has worked to manage her trauma through counseling and medication services," she is "unable to leave her home unassisted without panic" unless she knows the exact circumstances she will face and will not encounter many strangers. *Id*. Ms. Pruitt stated that Plaintiff cannot shop unaccompanied during normal store hours without panic attacks and "has difficulty raising her head to look at people, particularly men." *Id.* Ms. Pruitt stated that Plaintiff does not complete normal tasks consistently such as dressing, calling businesses on the phone, leaving home for most reasons, or advocating for her children's needs without struggling. She opined that "it is unlikely [Plaintiff] would manage work well outside the home." *Id*. She recommended continued counseling and medication services, but concluded that Plaintiff's impairments are "likely to be chronic on many levels for the years to come." *Id.*

Ms. Pruitt's Medical Source Statement checked boxes for "marked" impairment of Plaintiff's ability to interact with the general public and to use public transportation or travel in unfamiliar places, and "moderate" impairment of her ability to set realistic goals or to make plans independently of others. (AR 290-91.) In her narrative, Ms. Pruitt stated that "despite [Plaintiff's] efforts to attend counseling and participate in medication trials," she has not made significant progress in managing or reducing her anxiety. (AR 291.) Ms. Pruitt concluded that Plaintiff is "functionally limited," for example grocery shopping only with a companion or at very early hours, panics with most contact whether in person or by telephone, and is "primarily homebound."

The ALJ gave both sets of opinions "very little weight." (AR 291.) He determined that Ms. Pruitt's opinions conflicted with the longitudinal evidence in the record, including Ms. Pruitt's own treatment notes, as well as sources not available to Ms. Pruitt, such as Dr. Meagher's report,

ORDER
PAGE - 6

Plaintiff's testimony, and other medical records. (AR 25.) The ALJ noted that in contrast to Ms. Pruitt's report that Plaintiff undertook "medication trials," Ms. Pruitt's own treatment notes show that Plaintiff reduced her dosage (AR 255, 246) and discontinued the medication entirely several times. (AR 270, 274, 295, 299.) The medical records contain no evidence that plaintiff was advised by or consulted with the prescribing physician in taking these unilateral actions. (AR 25-26, 246.) The ALJ found that Ms. Pruitt's opinion that Plaintiff panics with most interpersonal contacts and is "primarily housebound" conflicts with Plaintiff's testimony that she leaves her house (driving herself) for appointments, to obtain money orders and pay bills and to shop either alone early in the morning or with her mother. (AR 26, 54, 56.) The ALJ further noted that, in contrast to Ms. Pruitt's statement that Plaintiff has difficulty raising her head to look at men, Dr. Meagher, a male examining psychologist, found that Plaintiff's "[e]ye contact was good and mood and affect showed a generally normal range." (AR 20, 264.) In addition, Dr. Meagher's examination noted relatively good ability to perform the activities of daily living, including meal preparation, household chores, personal hygiene and child care—in contrast to Ms. Pruitt's report that Plaintiff cannot perform normal tasks consistently. (AR 21, 264.) These are specific and germane reasons, supported by substantial evidence, for the ALJ's treatment of Ms. Pruitt's opinions. *Molina*, 674 F.3d at 1111.

Plaintiff's first challenge to these findings is a bare assertion that the evidence of Plaintiff's inconsistent use of her prescribed medication "[is] not [a] legitimate reason[ ]" for failing to credit Ms. Pruitt's opinion that Plaintiff had participated in medication trials. Dkt. 12 at 5. Inconsistency between a medical provider's opinion and her treatment notes is a germane reason for rejecting the opinion. *Molina*, 674 F.3d at 1112; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the

physician's own notes or observations is "a permissible determination within the ALJ's province"). Moreover, both here and throughout her briefing, Plaintiff merely raises an assertion, but fails to support it with legal argument or any discussion. Such conclusory statements are inadequate to preserve an issue on appeal. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments: "We require contentions to be accompanied by reasons.")

Next, Plaintiff argues that the ALJ improperly discounted Ms. Pruitt's opinions because she was not an acceptable medical source. Dkt. 12 at 5. Plaintiff appears to misconstrue the ALJ's statement. At the end of a paragraph discussing the evidence contrasting with Ms. Pruitt's opinions, the ALJ accurately stated that Ms. Pruitt is not an acceptable medical source. (AR 25.) He then concluded: "As such, Ms. Pruitt's letters are given very little weight." *Id*. The ALJ appears to be referring in this sentence to the entirety of the paragraph that precedes it, in which he discusses multiple reasons for giving little weight Ms. Pruitt's opinions. But even if the ALJ was instead declaring that Ms. Pruitt's status as an "other source" provided an additional reason to discount her evidence, any error would be harmless because the ALJ provided ample additional germane reasons, supported by substantial evidence, for his assessment. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons for discounting evidence is at most harmless error where other reasons are supported by substantial evidence).

Finally, plaintiff asserts (again, without any substantive argument) that the ALJ's description of Ms. Pruitt's Medical Source Statement as a "check-box form" was "not a legitimate reason" for discounting her opinions. Dkt. 12 at 5-6. To the contrary, "an ALJ may 'permissibly reject[ ] . . check-off reports that [do] not contain any explanation of the bases of their

ORDER
PAGE - 8

conclusions.'" *Molina*, 674 F.3d at 1111, quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Here, however, the ALJ's accurate description of the form is simply the concluding sentence to a paragraph that, as discussed above, lists additional specific and germane reasons for his assessment of the opinions contained on the form. There was no error in the ALJ's assessment of Ms. Pruitt's opinions.[6]

B.      Christopher Meagher, Ph.D.

Dr. Meagher conducted a consulting examination of Plaintiff. He diagnosed PTSD "chronic of moderate proportion" and panic disorder with agoraphobia. (AR 266.) He stated, however, that while these conditions have resulted in significant avoidance to the point of agoraphobia, they "would still be considered treatable rather than chronically disabling." *Id*. Dr. Meagher opined that Plaintiff would require additional treatment, including exposure-based interventions and appropriate anxiolytic medications, in order to be able to functionally engage in social interaction. *Id*. He stated that intensive treatment may need to be "fairly long term even up to one year," but such treatment would correspond with a "fair prognosis of sufficient improvement to allow for return to more normal productive functioning including gainful employment." *Id*.

The ALJ gave Dr. Meagher's opinions "great weight," except for his prognosis. (AR 24.) The ALJ relied upon Dr. Meagher's opinion in his determination that Plaintiff suffered from severe impairments. (AR 17-18.) He gave Dr. Meagher's prognosis limited weight, because Plaintiff did

---

[6] Plaintiff also assigns error to an additional basis provided by the ALJ for discounting Ms. Pruitt's (and also Dr. Meagher's) opinions—that Ms. Pruitt's statement that Plaintiff feared public places was contradicted by Ms. Pruitt's recommendation that, as therapy, Plaintiff take steps to expose herself to such places. Plaintiff appears to misconstrue the ALJ's statement, which is simply that Ms. Pruitt's suggestion that Plaintiff begin this process with locations that feel "safe" indicates that there are, in fact, locations where she "has some degree of comfort being outside of her home." (AR 25.) However, to the extent that this reason could be deemed erroneous, any error would be harmless in light of the additional specific and germane reasons the ALJ provided for his weighing of Ms. Pruitt's opinions. *Carmickle*, 533 F.3d at 1162.

ORDER
PAGE - 9

not avail herself of the intensive treatment that Dr. Meagher recommended. *Id*. The ALJ noted that Plaintiff did not attend counselling consistently; the record shows that attendance was sporadic, with several lengthy gaps in treatment. (AR 255-61, 270-74, 294-303.) He also observed that the counselling notes showed the "main" concerns addressed were situational, concerning relationships and parenting, with a lesser emphasis on Plaintiff's agoraphobia. (AR 24.) A review of the treatment notes shows that few sessions focused solely on Plaintiff's agoraphobia issues, while nearly half of the sessions addressed the more situational concerns. (AR 255, 256, 257, 259, 260, 270, 274, 297, 298, 300, 302, 303.)

Plaintiff disputes the ALJ's determinations, providing conclusory statements but no explanation or support for them. First, Plaintiff simply asserts that rejection of the prognosis because Plaintiff has not complied with the recommendations to achieve it is "not a convincing or even legitimate reason." Dkt. 12 at 7. The Court rejects Plaintiff's argument. As the ALJ noted, Dr. Meagher's prognosis statement was conditional—it was dependent upon Plaintiff's participation in "intensive" therapy; where the record demonstrated that the condition was not met, it was not error to reject the prognosis.

Next, Plaintiff challenges the evidentiary basis of the ALJ's reasons—again with no supporting argument or citation. Plaintiff denies the ALJ's observation that she testified to attending counselling regularly, but provides no record support. Dkt. 12 at 7. The record shows that Plaintiff answered affirmatively when asked whether "extensive counselling sessions . . . continue to this day," and conditioned her response only to note a single period in 2014 when she "wasn't in treatment." (AR 51-52.) But her therapist's treatment notes show multiple, lengthy gaps in treatment. (AR 255-61, 270-74, 294-303.) Similarly, Plaintiff baldly asserts that ALJ's observation of the counselling sessions' relative focus upon situational issues rather than

ORDER
PAGE - 10

agoraphobia is "not supported by substantial evidence." Dkt. 12 at 7. As discussed above, this proposition is supported by Ms. Pruitt's treatment notes. (AR 255-61, 270-74, 294-303.)[7]

Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[8] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ discounted plaintiff's testimony regarding the extent of her symptoms because it was not entirely consistent with the medical evidence and other evidence in the record. He found that, notwithstanding Plaintiff's argument that she cannot leave her house for work, she does so for other necessary functions, including visits to her therapist (to which she drives herself), bill paying, and trips to the grocery store (either accompanied or during non-busy times). (AR 23.) The ALJ also noted that Plaintiff's sporadic treatment record did not correspond to the level of

---

[7] Plaintiff raises a new challenge in her Reply, asserting that Dr. Meagher's opinion that up to one year of therapy would be required to attain productive functioning was improperly rejected and "support(s) a finding of disability." Dkt. 14 at 5. These arguments were not raised in Plaintiff's opening brief and are therefore waived. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.") (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).

[8] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, 2017 WL 5180304, case law containing that term remains relevant.

ORDER
PAGE - 11

symptoms she reported. *Id*. He found that the record showed that Plaintiff's gaps in treatment were not due to Plaintiff's mental impairments, but instead to situational issues, such as unrelated health issues, caring for elderly parents and child care. *Id*. Similarly, the ALJ noted that although Plaintiff testified that she was on her "second" medication trial and that her Buspar medication was helpful, the record shows only a low-dose prescription that Plaintiff had self-reduced, and self-discontinued and restarted more than once, with no record of consultation with the prescribing physician. (AR 24, 246, 255, 295, 299.)

The ALJ also noted multiple instances of conflict between Plaintiff's hearing testimony and statements she made to medical providers and to the SSA, including: (1) testimony that she was getting therapy consistently, when the record showed multiple lengthy gaps (AR 51-52, 255-61, 270-74, 294-303); (2) testifying that others go to her children's school for her, when she told her therapist that she did so (AR 60, 261); (3) testifying that she quit her housecleaning job because she could not leave the house, when she told her therapist she quit because she "became ill" (AR 72, 258); (4) keeping two "high energy dogs" but testifying she only takes them outside for brief bathroom breaks (AR 61); (5) testifying to averaging five panic attacks per day, even at home, but not reporting this frequency to any of her medical providers. (AR 69.)

Plaintiff argues that the ALJ's comparison of Plaintiff's symptom testimony to the medical evidence constitutes an improper invocation of the "objective evidence test," arguing that the ALJ improperly required that she substantiate each of her symptoms with objective medical evidence. Dkt. 12 at 8, citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). Plaintiff's argument fails. First, "while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Second, the ALJ did not reject plaintiff's symptom testimony for lack of medical corroboration. Instead, he applied the grounds well recognized by the law for evaluating symptom testimony: "inconsistencies either in [plaintiff's] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light*, 119 F.3d at 792. *See also* SSR 16-3p, 2017 WL 5180304 at *5-*8.

Plaintiff further asserts that the ALJ improperly relied upon her activities of daily living because they do not reflect skills or activities necessary for employment. Dkt. 12 at 9. But daily activities can be relied upon by an ALJ in evaluating plaintiff's symptom evidence for two different reasons: (1) to determine whether the activities contradict the claimant's testimony, or (2) to meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ properly applied the first ground.

Plaintiff next contests the ALJ's finding that plaintiff's level of treatment was not consistent with the degree of her symptoms. With no record citations, plaintiff baldly asserts that there is "ample evidence" that Plaintiff's gaps in therapy were caused by her mental impairments. Dkt. 12 at 9. The record contains no such evidence. Plaintiff testified that she drives herself to each of her therapy appointments, from which the ALJ could properly infer that her impairments do not prevent her from leaving home for this purpose. (AR 54.) Plaintiff admitted to only one gap in her therapy, in 2014, and reported that it was during a time when she "was down ill." (AR 52.) She neither acknowledged nor explained 4-month and 6-month gaps in her therapy in 2015,

ORDER
PAGE - 13

and a 9-month gap in 2016. (AR 255-56, 245, 274, 270, 303.)[9] Treatment notes surrounding those gaps likewise contain no indication that Plaintiff's mental health symptoms had caused her to stay away; the topics discussed in the notes cover situational issues, such as assisting her elderly parents, relationship and parenting issues, and other health concerns. *Id*. Plaintiff does not contest her inconsistent use of medication. Dkt. 12 at 10. There is substantial evidence in the record supporting the ALJ's finding that Plaintiff's treatment history and clinical notes do not support the level of impairment Plaintiff asserts. This is a clear and convincing reason for the ALJ's assessment of her symptom testimony. *Molina*, 674 F.3d at 1113 ("the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment") (internal quotations omitted); SSR 16-3p, 2017 WL 5180304 at *9.

Finally, Plaintiff contests the points of conflict observed by the ALJ between plaintiff's symptom testimony and the record. Dkt. 12 at 9-10. Plaintiff simply argues that different inferences should be made, with no discussion of evidence that invalidates that ALJ's conclusions. Where the ALJ's decision is supported by the evidence, even if another interpretation is also supportable, the Court must uphold the ALJ's decision. *Thomas*, 278 F.3d at 954.

<u>Lay Witness Statement</u>

Finally, Plaintiff challenges the ALJ's finding that a statement from her mother, Debra Joy, was entitled to "limited weight." AR 26.

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v.*

---

[9] Plaintiff states that the ALJ counted only 14 therapy sessions of the two and a half year period covered by the treatment records, when there were actually 20. Dkt. 12 at 9. The Court counts 22 sessions, but the actual number is immaterial; what is significant is that, for more than half of the relevant time period, Plaintiff was not receiving treatment.

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

The ALJ found that Ms. Joy's statement was not consistent with Plaintiff's own reports of her functioning. For example, while Plaintiff asserted that her mother took her children to "all of their baseball games," Ms. Joy stated that Plaintiff had previously done so. (AR 60, 207.) While Plaintiff reported that she goes outside daily and does yardwork (AR 217, 264), Ms. Joy stated that she does "no outside activity." (AR 208.) Finally, the ALJ noted that, while Ms. Joy's statement reports that Plaintiff's teenage son assists her with many tasks, Plaintiff testified that her older son no longer lives with her; the ALJ inferred that Plaintiff must now be performing for herself the tasks formerly done by her son. (AR 26, 207.)

Plaintiff challenges the ALJ's inferences, arguing that the facts should be interpreted differently. Dkt. 12 at 15. But the ALJ's interpretation is reasonable and is supported by substantial evidence; even if it is not the only reasonable interpretation, "it is not [the Court's] role to second-guess it." *Rollins*, 261 F.3d at 857.

<u>RFC and Step Five Findings</u>

Plaintiff asserts that the RFC and step five findings were erroneous because they failed to include all of the limitations described by therapist Pruitt, Dr. Meagher, Plaintiff and her mother. Dkt. 12 at 16. However, in light of the Court's determination that there was no reversible error in the ALJ's evaluation of that evidence, this restating of plaintiff's argument fails to establish error at steps four and five. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

/ / /

/ / /

/ / /

ORDER
PAGE - 15

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>18th</u> day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge